## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.S.-1 and R.S.**

**No. 19-0136** (Kanawha County 17-JA-97 and 17-JA-98)

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.S.-2, by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's January 4, 2019, order terminating her parental rights to K.S.-1 and R.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, W. Jesse Forbes, filed a response on behalf of the children, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her additional time to improve and when less-restrictive alternatives were available.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner in February of 2017, after receiving reports that K.S.-1, then approximately two years old, was wandering alongside the road and sitting on a porch alone for approximately two hours. The child's diaper was heavily soiled, her clothes were filthy, and she was crying and carrying a bottle with spoiled milk. Police officers arrived at the scene and announced their presence through the front door, which was ajar. As the officers walked through the home, they observed, in plain view, a variety of pill bottles, several syringes, a small amount of marijuana, an open bottle of antifreeze, and several other objects which could be harmful to a child. The officers also found eighteen containers of Propofol, a hospital grade opiate, within reach of the child. Further, the residence was in deplorable condition, with food, trash, and clutter strewn throughout the home. The officers eventually located

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as K.S.-1 and K.S.-2, respectively, throughout this memorandum decision.

the child's maternal grandmother, who was acting as guardian, asleep in her bed. Upon awakening the grandmother, the officers noted that she appeared to be under the influence, was unable to communicate clearly, and could not answer basic questions about the child. After investigating the matter, the DHHR learned that petitioner had an extensive Child Protective Services ("CPS") history, which included issues with substance abuse. The DHHR alleged that petitioner left her child with an inappropriate caregiver, did not have a safe or stable home for the children, and was not sufficiently motivated or organized to provide for the needs of the children on an ongoing basis. Petitioner waived her preliminary hearing.

Services were put in place for petitioner, but she failed to comply with the same. While petitioner checked in to Sheppard House, a rehabilitation program, she left due to "having issues" with the children's father. She then checked in to another facility, but was expelled for not complying with drug screens. Monthly court summaries revealed that petitioner's visits with the children went well, but she remained emotionally dependent on others, had not obtained employment, and continued to abuse substances. In fact, petitioner eventually lost visits with the children due to testing positive for controlled substances.

At an adjudicatory hearing held in September of 2017, petitioner stipulated to the conditions of abuse contained in the petition. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and granted her a post-adjudicatory improvement period. Thereafter, the DHHR assisted petitioner in entering another rehabilitation program in Huntington, West Virginia. However, petitioner only stayed one week before leaving the program against medical advice. Although petitioner attended her parenting and adult life skills classes, she failed to re-enter treatment or submit to drug screens so that she could visit with the children. Indeed, by March of 2018, petitioner had still not re-entered treatment and self-reported recent methamphetamine use.

The circuit court held a dispositional hearing in June of 2018. Petitioner failed to attend, but was represented by counsel. The DHHR presented the testimony of a CPS worker, who testified that petitioner was "given . . . opportunity after opportunity" during the proceedings, yet failed to meaningfully comply with her improvement period. While petitioner frequently stated that she wanted to re-enter treatment, she only stayed a maximum of two to three days each time. Further, petitioner was not consistent in maintaining contact with her service provider and failed to visit with the children due to her refusal to submit to drug screens. The worker testified "[s]he has not been compliant for pretty much the entirety of the case." After hearing evidence, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future given her failure to follow through with the family case plan and resulting inability to rectify the circumstances of abuse. The circuit court also found that the termination of petitioner's parental rights was in the children's best interests. It is from the January 4, 2019, dispositional order terminating petitioner's parental rights that she appeals.[2]

The Court has previously established the following standard of review:

---

[2]The father's parental rights were also terminated during the proceedings below. The permanency plan for the children is adoption by the paternal grandparents.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court should not have terminated her parental rights without first granting her "further time for improvement." While petitioner acknowledges that she was given opportunities to seek treatment for her substance abuse issues, she argues that she "obviously needed more time to complete her services." She states that the children were in safe placements and, as such, she should have been given more time to pursue treatment. Petitioner avers that "[i]t can be expected that the nature of [petitioner's] problems would lead to setbacks" and that she should have been given more time to address her issues. We disagree.

We first note that petitioner fails to cite to the record demonstrating that she requested additional time to seek treatment. Indeed, the record reveals that petitioner failed to attend the dispositional hearing and made no request for a post-dispositional improvement period or additional time of any kind. "Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (quoting *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)).

In any event, even had petitioner requested more time to comply with services, the circuit court did not err in terminating petitioner's parental rights as there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future and when termination was necessary for the children's welfare. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Petitioner clearly failed to respond to or follow through with rehabilitative efforts designed to reduce or prevent the abuse and neglect of her children. Petitioner's compliance with services was sporadic, at best, and she failed to successfully complete any rehabilitation program. Testimony established that petitioner was given "opportunity after opportunity" to enter treatment programs, but only stayed two to three days, at most, before leaving the program against medical advice. Further, petitioner failed to submit to drug screens, rendering her unable to visit with her children throughout the duration of the proceedings. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). While petitioner now claims that she needed more time to enter a rehabilitation program, we note that service providers offered to assist her in re-entering the program in Huntington, West Virginia, on numerous occasions, but each time petitioner failed to show up or changed her mind about attending. Accordingly, the record demonstrates that affording petitioner additional time would have simply delayed permanency for the children, and we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (quoting syl. pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)).

Further, petitioner argues that because the children were safely placed with their paternal grandparents, there were less-restrictive alternatives to terminating her parental rights. She insists that the circuit court could have granted the grandparents guardianship of the children, allowing her to seek modification in the future should she address her issues. However, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the evidence of petitioner's lack of meaningful participation in the underlying proceedings, we agree with the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future and that termination of her parental rights was necessary for the children's welfare. Accordingly, we find that petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 4, 2019, order is hereby affirmed.

Affirmed.

4

**ISSUED**:  June 12, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

5